UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL HANDLEY O/B/O E.F., a minor,      Case No. 15-12656

            Plaintiff,      Marianne O. Battani
v.      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,      Stephanie Dawkins Davis
                             United States Magistrate Judge
           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 18)**

## I.  PROCEDURAL HISTORY

    A.    Proceedings in this Court

On July 28, 2015, plaintiff, mother of E.F., a minor child, filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income childhood disability benefits on E.F.'s behalf.  (Dkt. 5).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 16, 18).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for supplemental security income childhood

disability benefits on May 30, 2012, on behalf of her minor child, E.F., alleging

disability beginning on May 1, 2012. (Dkt. 14-2, Pg ID 79). The claim was

initially disapproved by the Commissioner on September 17, 2012. *Id*. Plaintiff

requested a hearing and on January 16, 2014, plaintiff and E.F. appeared, with

counsel, before Administrative Law Judge (ALJ) Kevin Fallis, who considered the

case *de novo*. (Dkt. 14-2, Pg ID 99-143). In a decision dated March 28, 2014, the

ALJ found that E.F. was not disabled. (Dkt. 14-2, Pg ID 76-94). Plaintiff

requested a review of this decision, and the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits,[1] the

Appeals Council, on May 29, 2015, denied plaintiff's request for review. (Dkt.

14-2, Pg ID 51-56); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

For the reasons set forth below, it is **RECOMMENDED** that plaintiff's

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

motion for summary judgment be **DENIED**, defendant's motion for summary

judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

A.     <u>ALJ Findings</u>

The claimant, E.F., was nine years old at the time of the administrative

hearing.  (Dkt. 14-2, Pg ID 104).  Plaintiff's claim for disability on E.F.'s behalf is

based on the assertions that he has hypertension, asthma, behavioral problems,

difficulty breathing, hyperactivity, violent tendencies, trouble

focusing/concentrating, throws fits/tantrums, and gets frustrated easily.  (Dkt. 14-

4, Pg ID 159).

At Step I of the three-step sequential evaluation process, the ALJ found that

E.F. did not engage in substantial gainful activity since May 30, 2012, the

application date.  (Dkt. 14-2, Pg ID 82).  At Step II, the ALJ found that the

claimant had asthma, attention deficit hyperactivity disorder, and oppositional

defiant disorder, which he found to be severe impairments that caused more than

minimal functional limitations.  *Id*.  At Step III, the ALJ found that the claimant

did not have an impairment or combination of impairments that met or medically

equaled the Listings or that functionally equaled the Listings.  *Id*. at Pg ID 84.  In

denying plaintiff's claim, the ALJ evaluated the claimant's degree of limitation in

3

each of the six functional equivalence domains and concluded that he did not have "marked" or "extreme" limitations in any of the six broad functional domains and thus did not functionally equal a listed impairment. *Id*. at Pg ID 84-93. The ALJ thus determined that the claimant was not disabled from May 1, 2012 through the date of the decision. *Id*. at Pg ID 93.

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

4

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

5

about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. (SSR) 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Legal Standards - Eligibility for SSI Childhood Disability Benefits

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

1.    A child will be found "not disabled" if he engages in substantial gainful activity.

2.    A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.

3.    A child will be found "disabled" if he has an impairment or

7

2:15-cv-12656-MOB-SDD   Doc # 21   Filed 08/18/16   Pg 8 of 33   Pg ID 416

> combination of impairments that meets, medically equals, or
> functionally equals an impairment listed in 20 C.F.R. Part 404,
> Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the

SSA will assess the functional limitations caused by the child's impairment.  20

C.F.R. § 416.926a(a).  The SSA will consider how a child functions in six

domains:

1.   Acquiring and using information;

2.   Attending and completing tasks;

3.   Interacting and relating with others;

4.   Moving about and manipulating objects;

5.   Caring for yourself; and

6.   Heath and physical-being.

20 C.F.R. § 416.926a(b)(1).  If a child's impairments result in "marked"

limitations in two domains, or an "extreme" limitation in one domain,[2] the

impairment functionally equals the listing and the child will be found disabled.  20

C.F.R. § 416.926a(d).

---

[2] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

C.   The ALJ Was Not Required to Order An Updated Consultative Examination.

While plaintiff acknowledges that the ALJ has discretion under applicable social security regulations to determine whether further evidence, such as additional testing or expert testimony, is necessary" she contends that the ALJ should have obtained an updated consultative examination with an opinion as to all six functional domains. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917).   This was required for several reasons, according to plaintiff.  First, the ALJ relied on the DDS non-examining medical consultants of record.  Plaintiff points out, however, that these opinions were rendered in August and September of 2012, which was before "the claimant began to receive regular medication for ADHD/ODD in October 2012 and medical records indicate that his symptoms 'improved to a great extent' with medication." (Dkt. 14-2, Pg ID 87). Thus, according to plaintiff, the ALJ disagrees somewhat with the non-examining physician opinions prior to the claimant regularly taking Concerta.  Further, in explaining their opinions, the non-examining physicians stated at the time "Child does have significant ADD, not in Special Ed., All domains are less than markedly limited." (Dkt. 14-3, Pg ID 152).  Therefore, plaintiff suggests that the lack of special education at the time significantly affected the non-examining physician opinions, and as claimant was later placed in

special education, their lack of knowledge of that fact renders their opinions
unsupported by substantial evidence.

Plaintiff also points out that the consulting examiners did not have the
benefit of the claimant's IEP. The IEP shows that the claimant entered special
education in May 2013 in reading, writing, and mathematics, showing significant
educational deficiencies. (Dkt. 14-7, Pg ID 332-340). Thus, according to
plaintiff, the non-examining physician opinions, by their own notation, render
their opinions out of date because they surely would have changed once it was
revealed the claimant was in special education.

Plaintiff also suggests that an updated medical opinion should have been
obtained because the ALJ rejected the examining physician Dr. Khan's opinion,
which found that the claimant has marked limitations in attending and completing
tasks, acquiring and using information, and moving about and manipulating
objects. (Dkt. 14-2, Pg ID 87-93). One of the ALJ's main bases for denying
disability in this case stems from Dr. Khan's treatment note from July 25, 2013
"after ADHD meds he is improved to great extent." (Dkt. 14-2, Pg ID 88; Dkt. 14-
7, Pg ID 316). Dr. Khan rendered his opinion on December 17, 2013, well after he
made the statement that claimant improved on medications. According to
plaintiff, the ALJ is improperly cherry-picking only the evidence that weighs in
favor of his decision. Here, the ALJ heavily relies on Dr. Khan's statement

showing the claimant in a favorable light but completely disregards his statement as to three marked limitations, finding it inconsistent with the assessment that claimant improved on the record.  Plaintiff contends that this makes the evidence and record unclear.

Causing a further lack of clarity, according to plaintiff, an earlier consultative examiner, on September 6, 2012, who did not render a functional limitation opinion, on examination found claimant easily distracted throughout the interview.  (Dkt. 14-7, Pg ID 286).  She found the claimant's immediate memory impaired due to his distractibility and difficulty remaining on task.  (Dkt. 14-7, Pg ID 286).  His psychomotor activity was "[h]yperactive, the client had difficulty remaining still for even 5 seconds.  He was moving about the room, laying [sic] on the floor, pushing the chair.  For about 5 minutes he was rolling around on the floor while talking with this examiner.  The parents failed to correct any of this behavior during the evaluation."  (Dkt. 14-7, Pg ID 287).  Dr. Goergen felt he needed additional therapy, and diagnosed ADHD and intermittent explosive disorder.  (Dkt. 14-7, Pg ID 287).  She opined the prognosis was guarded.  (Dkt. 14-7, Pg ID 288).  She assigned a global assessment of functioning ("GAF") score of 40 to 50.  (Dkt. 14-7, Pg ID 288).

Plaintiff also points out that in May 2013 (when the claimant was clearly on medication as discussed in the credibility argument), IEP testing revealed his

receptive and expressive language skills were in the "very low range of functioning," indeed, in the 0.3 percentile range. (Dkt. 14-7, Pg ID 332). Plaintiff maintains that these skills would not necessarily be improved by ADHD medication, and likely have nothing to do with ADHD medication. The testing further revealed the claimant would be a third grader who is reading roughly 1 year and 6 months below his grade placement. (Dkt. 14-7, Pg ID 334). Again, plaintiff says that these assessments do not necessarily have to do with behavioral assessments. It was noted that claimant worked very slowly on math and reading tasks and, as a result, his fluency scores were near the beginning of first grade level. (Dkt. 14-7, Pg ID 334). His writing skills were in the kindergarten level. (Dkt. 14-7, Pg ID 334). The psychological evaluation from May of 2013 reveals that "attention span has been a problem with student off task most of the time and engaging in disturbing behaviors that distract others in the classroom. Student wants to be engage [sic] in the learning process but seems to be prevented due to excessive activity level." (Dkt. 14-7, Pg ID 334).

Based on the foregoing, plaintiff contends that the ALJ never relied on any medical opinion that analyzed the claimant while taking Concerta. She also asserts that the non-examining opinions indicate they would have changed had they known the claimant was going to be in special education, and they were rendered prior to the claimant taking Concerta. The ALJ rejected Dr. Khan's

12

opinion, but heavily relied upon his earlier statement that Claimant's medications greatly improved his behavior.  Thus, plaintiff maintains that the record is unclear from a medical standpoint as to the claimant's limitations within the functional domains, and as such, a consultative examination should have been ordered for an updated assessment while the claimant was taking medication, especially considering the ALJ rejected the only fully informed, relevant opinion during that period, which was rendered by Dr. Khan.

In response, the Commissioner contends that the ALJ was not required to order a second consultative examination, and thus, there was no abuse of discretion.  The Commissioner says that, contrary to plaintiff's assertions, the record is quite clear.  Specifically, the Commissioner argues that the ALJ correctly rejected Dr. Khan's December 2013 opinion, which found "marked" limitation in three domains, because it was inconsistent with his own medical records, which noted improvement with medication, and the other medical and school evidence, which suggest far fewer limitations with respect to the domains of function.  (Dkt. 14-2, Pg ID 87, 89, 90).  According to the Commissioner, it is telling that Dr. Khan ticked the check-box that the claimant had "marked" limitation in moving about and manipulating objects (Dkt. 14-7, Pg ID 345), when there was absolutely no basis for such a finding in the record.  To that end, the ALJ cited Dr. Khan's check-mark as "suggest[ing] a misunderstanding of the nature of this particular

13

domain." (Dkt. 14-2, Pg ID 91). According to the Commissioner, the ALJ is being charitable as Dr. Khan's finding marked limitation in this regard without any evidence supporting this finding suggests a complete misunderstanding of the entire form and undermines its validity. The Commissioner also points out that although prompted to do so, Dr. Khan provided no analysis whatsoever explaining his assigned limitations. (Dkt. 14-7, Pg ID 346).

Next, the Commissioner argues that the remaining evidence cited by plaintiff does not suggest a lack of clarity regarding the severity and functional impairment attributable to the claimant's conditions. For example, the DDS opinion of September 2012, which plaintiff criticizes because it was done before the claimant began taking his ADHD medication, had the potential to benefit plaintiff's argument in that it arguably reflects the claimant's condition in a more raw state without the effects of medication. That is, according to the Commissioner, had the DDS review been performed while the claimant was on ADHD medication, the findings would have most likely shown improvement, in a similar way that the medical and academic records showed improvement after the claimant was placed on ADHD medication. (Dkt. 14-7, Pg ID 316, 323-328). Instead, however, the DDS physicians conducted their review while the claimant's ADHD symptoms were not being controlled either through medication or by academic intervention such as special education classes. The Commissioner also

14

points out that DDS physician Liu, who fully considered Dr. Goergen's consultative examination (Dkt. 14-7, Pg ID 285-289), found no marked limitations in any of the six domains.

The Commissioner also suggests that plaintiff's argument that the DDS opinions "indicate they would have changed had they known the claimant was going to be in special education" is flawed. While the Commissioner acknowledges that the DDS physician observed that the claimant had significant ADHD but was not in special education (Dkt. 14-3, Pg ID 152), the DDS physician made no suggestion that being in special education would have changed the ultimate opinion. Alternatively, even if being in special education would have affected the DDS physician's opinion, the only domain in which he referenced special education enrollment was the domain of "Acquiring and Using Information" as one would expect since that domain involves one's ability to learn, including in school settings. (Dkt. 14-3, Pg ID 151). The Commissioner points out that having "marked" limitation in only this domain would not change the outcome of this case, as one still needs "marked" limitation in two domains to functionally equal the Listings. 20 C.F.R. § 416.926a(a), (d).

More importantly, according to the Commissioner, the claimant is in special education and the most recent academic report does not show marked impairment in two domains. (Dkt. 14-7, Pg ID 323-328). Accordingly, the evidence does not

15

suggest that the DDS examiner would find marked impairment in one or two domains, based upon the knowledge that the claimant is enrolled in special education.  Thus, the Commissioner asserts that this Court should not remand this case, where there is no reason to believe that remand might lead to a different result.  *See NLRB v. Wyman-Gordon*, 394 U.S. 759 (1969), quoted in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

In the view of the undersigned, an updated medical advisor opinion is not necessary in these circumstances. The evidence added to the record after the assessments by Dr. Liu shows improvements in the claimant's ADHD, rather than any deterioration.  There is no reason to believe that those improvements would have resulted in a finding of greater impairment.  Therefore, it was reasonable, and within the ALJ's discretion, to conclude that an additional medical advisor was not necessary.

The present circumstances are similar to those in *Thacker ex rel. Pratt v. Comm'r of Soc. Sec.*, 229 F.3d 1154, *3 (6th Cir. 2000) (unpublished), in which the plaintiff argued that the testimony of a medical advisor was needed to evaluate new evidence of the claimant's ADHD.  The Sixth Circuit concluded, given that the ALJ's authority to obtain the services of a medical advisor is discretionary and

16

that the evidence regarding ADHD that was dated after the medical assessments overwhelmingly supported the ALJ's finding that the claimant was able to function in an age-appropriate manner, there was no error. *Id*. (citing 20 C.F.R. § 416.920a(d) (1995); *Wilson v. Apfel*, 179 F.3d 1276, 1277-78 (11th Cir. 1999)). Similarly, in this case, the medical reports by Dr. Khan and the claimant's school records both show significant improvement in the claimant's ADHD. Thus, the ALJ's decision not to seek an updated medical advisor opinion is not reversible error.

      D.    <u>Substantial Evidence Supports the ALJ's Determination That the Claimant's Impairments Were Not Functionally Equal to the Listings</u>.

Plaintiff does not appear to object to the ALJ's conclusion that the claimant's impairments did not meet the Listings. Rather, the appeal seems to be related to the ALJ's assessment of whether the claimant's impairment of ADHD functionally equaled an impairment in the Listings, based on an assessment of the six domains found in 20 C.F.R. § 416.926a(a). The claimant has to show that the ALJ's decision that she suffered from less than marked limitations in two of the six domains is unsupported by substantial evidence, or that the ALJ's decision that plaintiff's limitations in one of the six domains was not extreme was unsupported by the substantial evidence. Here, plaintiff only objects to the ALJ's decision regarding two of the six domains: (1) attending and completing tasks and (2)

interacting and relating with others.

    *1. Attending and Completing Tasks*

  This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities.  20 C.F.R. § 416.926a(h).  The regulations provide that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.  The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments).  The child should be able to change activities or routines without distraction, and stay on task and in place when appropriate.  The child should be able to sustain attention well enough to participate in group sports, read by herself, and complete family chores.  The child should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.  20 C.F.R. § 416.926a(h)(2)(iv).

  Social Security regulation 20 C.F.R. § 416.926a(h)(3) sets forth some examples of limited functioning in this domain that children of different ages

might have.  The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, according to the ALJ, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in attending and completing tasks are: (i) easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) easily frustrated and gives up on tasks, including ones she is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

According to plaintiff, the ALJ found the claimant has less than marked limitation in attending and completing tasks, mainly citing improvement in ADHD and ODD symptoms with medications.  But plaintiff maintains that there is no medical evidence that such drastic improvement occurred on medications as the ALJ suggests, and he should have found at least marked limitations in attending and completing tasks.  For instance, in March of 2011, the claimant treated with Dr. Hai where it was reported by plaintiff that the claimant was "extremely hyperactive" and displayed positive signs of impulsiveness and distractibility. (Dkt. 14-7, Pg ID 267).  Plaintiff reported to consultative examiner Dr. Goergen in September 2012 that the claimant has difficulty in school remaining seated,

19

staying quiet, focusing on tasks, completing tasks and assignments, and difficulty following 2 to 3 step directions. (Dkt. 14-7, Pg ID 286). On examination, Dr. Goergen found the claimant easily distracted throughout the interview. (Dkt. 14-7, Pg ID 286). She found the claimant's immediate memory impaired due to distractibility and difficulty remaining on task. (Dkt. 14-7, Pg ID 286). His psychomotor activity was "[h]yperactive, the client had difficulty remaining still for even 5 seconds. He was moving about the room, laying [sic] on the floor, pushing the chair. For about 5 minutes he was rolling around on the floor while talking with this examiner. The parents failed to correct any of this behavior during the evaluation." (Dkt. 14-7, Pg ID 287). Dr. Goergen opined that the claimant's condition was "guarded." (Dkt. 14-7, Pg ID 287).

Plaintiff further points out that on September 11, 2012, Mrs. Hutchings, the claimant's second grade teacher, rated his current academic performance at the worst level possible "far below grade" in all academic areas (reading, math, writing/English language arts, social studies, and science). (Dkt. 14-6, Pg ID 252). She indicated that the claimant repeated the first grade. (Dkt. 14-6, Pg ID 252). As to "compared to typical pupils his same age," the claimant was rated in the worst category "much less" in the following areas: how hard he is working; how appropriately he is behaving; and how much he is learning. (Dkt. 14-6, Pg ID 253). Mrs. Hutchings was concerned that the claimant "is very easily distracted

and off task most of the time. He plays with pencils, talks with people at his table and is rarely able to focus. He is also very low in [reading/writing.]" (Dkt. 14-6, Pg ID 253).  She indicated the claimant often does the following things: hums or makes other noises in class; fails to finish things he starts; cannot concentrate, can't pay attention for long; cannot sit still, restless, or hyperactive; fidgets; has difficulty following directions; disturbs other pupils; is impulsive without thinking; and has difficulty learning.  (Dkt. 14-6, Pg ID 254).

Moreover, in May 2013, an IEP indicated the claimant had a short attention span and was off task the majority of time.  (Dkt. 14-7, Pg ID 332).  Testing revealed that the claimant is a third grader reading roughly 1 year and 6 months below grade placement.  (Dkt. 14-7, Pg ID 334).  It was noted the claimant worked very slowly on math and reading tasks and, as a result, his fluency scores were near the beginning of first grade level.  (Dkt. 14-7, Pg ID 334).  His writing skills were in the kindergarten level.  (Dkt. 14-7, Pg ID 334).  The psychological evaluation from that month reveals "attention span has been a problem with student off task most of the time and engaging in disturbing behaviors that distract others in the classroom."  (Dkt. 14-7, Pg ID 334).  Finally, Dr. Khan opined he has a marked limitation in this domain.  (Dkt. 14-7, Pg ID 325).

According to the Commissioner, plaintiff's argument should be rejected. The Commissioner points out that noticeably absent from plaintiff's argument is

any mention of the DDS physician, who expressly addressed Dr. Goergen's report and concluded that the claimant had less than marked limitation in the domain of attending and completing tasks. (Dkt. 14-3, Pg ID 151). More significantly, the Commissioner says that plaintiff fails to mention the December 2013 teacher assessment, which the ALJ relied on to a great extent in support of his finding that the claimant experienced significant improvement after being placed on medication. (Dkt. 14-2, Pg ID 88). This assessment showed that, although the claimant indeed had problems in this domain, there was no "serious" problem identified by the teacher. (Dkt. 14-7, Pg ID 325). Regulations provide that a child has "marked" limitation in a domain when an impairment interferes "seriously" with the ability to independently initiate, sustain, or complete activities within the domain. *See* 20 C.F.R. § 416.926a(e)(2). The Commissioner asserts that if there is no "serious" impairment, then there can be no "marked" limitation.

The undersigned agrees with the Commissioner that substantial evidence supports the ALJ's decision that the claimant did not satisfy the domain of attending and completing tasks. Specifically, although Dr. Khan opined that the claimant had a marked limitation in this area, his treating notes indicated that the claimant had improved significantly since starting medication and receiving special education assistance in school. In addition, Dr. Liu opined that the claimant had a less than marked limitation in this area, even before the claimant

began receiving special education assistance and medication. Finally, the claimant's school records showed a significant improvement and in 2013, the claimant's teacher found no "serious" problems with any of the functions in this domain. (Dkt. 14-7, Pg ID 325). Having a less than marked impairment certainly does not mean that the claimant is unimpaired, but the mere existence of that impairment does not necessarily mean, as plaintiff's argument suggests, that a claimant is "markedly" impaired in a particular domain. In the view of the undersigned, the ALJ's decision is supported by substantial evidence.

### 2.   *Interacting and Relating with Others*

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). The regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R.

§ 416.926a(i)(2)(iv).

Social Security regulation 20 C.F.R. § 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of different ages might have.  The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

Plaintiff contends that the ALJ should have found at least a marked limitation in this area.  Again, plaintiff advances that there is no medical evidence to support the ALJ's conclusion that claimant had a less than marked limitation based on an improvement in his behavior due to medication.  Considering the criteria of this domain, plaintiff maintains that the claimant should have been found to at least have a marked limitation.  In support of this argument, plaintiff

24

points to the September 6, 2012 consultative examination report, showing that plaintiff reported that when the claimant does not get his way, he will "kick, throw things, fight everybody." (Dkt. 14-7, Pg ID 285). Additionally, IEP Testing revealed the claimant's receptive and expressive language skills were in the "very low range of functioning," indeed, in the 0.3 percentile range. (Dkt. 14-7, Page ID 332). The IEP testing, done in May 2013, further revealed "attention span has been a problem with student off task most of the time and engaging in disturbing behaviors that distract others in the classroom. Student wants to be engage [sic] in the learning process but seems to be prevented due to excessive activity level." (Dkt. 14-7, Pg ID 334). Further, Dr. Khan also opined that the claimant has a marked limitation in this domain. (Dkt. 14-7, Pg ID 345).

The claimant also testified he does not get along with his brother or his sisters. (Dkt. 14-2, Pg ID 112-113). He testified his sisters "mess" with him and tease him. (Dkt. 14-2, Pg ID 113). Plaintiff testified she has been called twice this year when claimant was extremely disruptive. (Dkt. 14-2, Pg ID 126). Plaintiff further testified the claimant does not get along with his sisters or brother at all, he will punch his little sister, and with respect to that, "[h]is little sister, he [is] trying to hurt her." (Dkt. 14-2, Pg ID 127). Accordingly, plaintiff maintains that the ALJ should have found the claimant has a marked limitation in interacting and relating to others.

According to the Commissioner, plaintiff's argument should be rejected. The Commissioner points out that although plaintiff relies on Dr. Goergen's September 2012 report as evidence of behavioral problems, she omits the fact that the DDS physician expressly relied on this report in finding that the claimant did <u>not</u> have marked limitation in the domain of interacting and relating with others. (Dkt. 14-3, Pg ID 151). In addition, while plaintiff argues that there is "no direct medical evidence" showing that medication improved the claimant's behavior, the Commissioner contends that this is untrue. In his July 2013 treatment report, Dr. Khan noted that the claimant experienced "anger problems, behavior problems, discipline problems, and hyperactivity," but that "after ADHD meds he is improved to great extent." (Dkt. 14-7, Pg ID 316). Even if this notation does not count as "direct medical evidence," the Commissioner points out that the remainder of the report is devoid of any indication of current behavior problems. Significantly, plaintiff fails to mention the December 2013 teacher's report (Dkt. 14-7, Pg ID 323-328), which (as noted by the ALJ), indicates that the claimant has no difficulties with interacting and relating with others. Plaintiff also relies heavily on the hearing testimony concerning the claimant's behavioral problems and difficulties in getting along with his siblings (Pl's Mem. 19-20). However, plaintiff ignores hearing testimony noting that the claimant enjoys going to school, has friends at school, participates in team sports such as basketball, gets along

with his teachers, and has close friends in his neighborhood. (Dkt. 14-2, Pg ID 105, 107, 111, 125, 128).

Again, in the view of the undersigned, plaintiff's argument suggests that because there is some evidence that the claimant has a limitation in this area, that limitation must be at least marked. Besides Dr. Khan's assessment, which is not supported by his treating records and contains no narrative description regarding why the claimant's limitation in this domain is marked, there is very little evidence suggesting that level of impairment. Moreover, there is substantial evidence of significant improvements in this domain since the claimant started medication and special education services. (Dkt. 14-7, Pg ID 326). Again, the undersigned does not suggest that plaintiff has no limitations in this regard, but some limitation does not automatically translate into a marked limitation. For these reasons, the undersigned finds that the ALJ's decision that plaintiff did not have a marked limitation in this domain is supported by substantial evidence.

E.    The ALJ's Credibility Determination is Supported by Substantial Evidence.

According to plaintiff, the ALJ erred in finding her statements regarding the claimant's impairments not fully credible. The ALJ asserted the claimant's medication compliance appears spotty at times in 2013, and, according to plaintiff, the ALJ's main contention with plaintiff's credibility is the claimant's

27

improvement with medication. (Dkt. 14-2, Pg ID 85). When the ALJ is saying the claimant's medication compliance is "spotty" in 2013, the ALJ is referring to a treatment note on April 15, 2013 where the claimant treated with Dr. Magar. Here, the claimant's mother requested Concerta be refilled, and it was noted the claimant was out of medication and exhibited "worsening behavior, lack of focus and attention at school, [and] multiple complaints from teachers." (Dkt. 14-7, Pg ID 307). He was prescribed Concerta daily on April 15, 2013. (Dkt. 14-7, Pg ID 307). But a psychological evaluation outlined in Claimant's IEP, conducted May 10, 2013, reveals "attention span has been a problem with student off task most of the time and engaging in disturbing behaviors that distract others in the classroom. Student wants to be engage [sic] in the learning process but seems to be prevented due to excessive activity level." (Dkt. 14-7, Pg ID 334). Thus, as the claimant's psychological evaluation was less than 30 days from when he was most recently prescribed Concerta, he was likely taking Concerta during the psychological evaluation and still displayed significantly disruptive behavior. Further, plaintiff testified the claimant was only slightly improved on Concerta, as he was still hyper. (Dkt. 14-2, Pg ID 132). She testified that even on medications, the claimant cannot sit still or stay in place without distraction. (Dkt. 14-2, Pg ID 141-142). Thus, contrary to the ALJ's assertion, and in accordance with Dr. Khan's December 2013 opinion, plaintiff contends that the claimant's medications

28

did not improve as significantly as the ALJ suggests while on medication, and therefore the credibility determination is unsupported by substantial evidence.

The Commissioner points out that the ALJ noted that in her testimony, plaintiff appeared to allege that the claimant's symptoms remained very serious despite medication and treatment.  (Dkt. 14-2, Pg ID 85).  Nonetheless, the ALJ found that "these allegations are not fully consistent with the evidence and cannot be deemed wholly credible."  (Dkt. 14-2, Pg ID 85).  The ALJ found that plaintiff's testimony was "inconsistent with the medical evidence, which confirms significant improvement with medication."  (Dkt. 14-2, Pg ID 86).  While plaintiff challenges the ALJ's credibility assessment, relying on the May 2013 IEP and Dr. Khan's December 2013 medical opinion for the proposition that medications did not improve the claimant's condition as significantly as the ALJ suggested, the Commissioner maintains that the ALJ's credibility determination is supported by substantial evidence.

As an initial matter, the Commissioner points out that an ALJ's credibility assessment can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 977, 981 (6th Cir. 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (ALJ's credibility assessment is entitled to "great deference," and a claimant's credibility may be properly discounted where an ALJ

finds contradictions among medical reports, testimony, and other evidence).
Here, according to the Commissioner, there is no "compelling reason" to disturb
the ALJ's credibility assessment, since he correctly found that contradictory
evidence undermined plaintiff's testimony.

According to the Commissioner, plaintiff's contention that the
psychological evaluation reflects the claimant's behavior while fully medicated is
speculative at best.  The Commissioner argues that it is unclear whether the
psychological assessment relied upon past events, specifically before the
claimant's lapsed ADHD prescription was renewed in April 2013.  The
Commissioner again points out that plaintiff fails to mention the December 2013
teacher report (Dkt. 14-7, Pg ID 323-328), as well as Dr. Khan's medical report
from July 2013, in which he noted that after taking ADHD medications the
claimant "improved to a great extent."  (Dkt. 14-7, Pg ID 316).  The
Commissioner maintains that these recent school records and medical evidence
were cited by the ALJ in determining the appropriate probative value afforded to
plaintiff's testimony.  (Dkt. 14-2, Pg ID 85-86).  This evidence provides
substantial evidence supporting the ALJ's credibility determination, and as there is
no "compelling reason" to the contrary, the ALJ's decision should be affirmed.

In the view of the undersigned, the Commissioner is correct that there is no
compelling reason to disturb the ALJ's credibility findings.  There is substantial

evidence to support the ALJ's decision to not fully credit plaintiff's testimony, including medical records from Dr. Khan and plaintiff's most recent school records, both of which reflect significant improvements in the claimant's behavior and functioning. *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

## IV.    RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

31

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 18, 2016                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 18, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
